CITY OF PINE BLUFF, ARKANSAS,
Petitioner,

v.

UNITED STATES DEPARTMENT OF
LABOR, F. Ray Marshall,
Secretary, Respondent.

No. 80–1905.

United States Court of Appeals,
Eighth Circuit.

Submitted June 18, 1981.

Decided Sept. 1, 1981.

Byron Freeland, argued, Mitchell, Williams, Gill & Selig, Little Rock, Ark., for petitioner.

Alfred G. Albert, Acting Sol. of Labor, Nathaniel Baccus, III, Associate Sol., Jonathan H. Waxman, Counsel for Litigation, E. Kathleen Shahan, Atty., U. S. Dept. of Labor, Washington, D. C., for respondent.

Before HENLEY and McMILLIAN, Circuit Judges, and COLLINSON, Senior District Judge.[*]

HENLEY, Circuit Judge.

The City of Pine Bluff, Arkansas petitions for review of a decision of the Secretary of Labor holding that petitioner violated 29 C.F.R. §§ 98.26 and 98.45, and ordering reinstatement and back pay for City employee Vivian Jones. Specifically, the Administrative Law Judge made findings of fact and conclusions of law as follows:

1. Vivian Jones was employed by the City of Pine Bluff, Arkansas, under Title VI of the CETA Program as a secretary from January 3, 1978 to February 12, 1979, when she was dismissed.

2. The subgrantee, City of Pine Bluff, is in violation of 29 C.F.R. § 98.26 for taking adverse actions against Vivian Jones as set forth in the Mayor's December 28, 1978 memorandum to the City Attorney and the City Attorney's January 4, 1979, letter to Rhonda Creacy without first serving Mrs. Jones with a written notice setting forth the grounds for each action.

3. The City of Pine Bluff is in violation of 29 C.F.R. § 98.45(b) in that the City Attorney's actions with respect to Mrs. Jones during and subsequent to her exercising her grievance rights relative to the December 28, 1978, reprimand letter constitute coercion and intimidation of Mrs. Jones for the purpose of interfering with her securing those rights.

4. The City of Pine Bluff has made no clear job offer to Mrs. Jones subsequent to her removal on February 12, 1979.

5. Mrs. Jones' CETA Title VI employment eligibility under the position from which she was removed expired on October 1, 1979.

The City contends (1) that Ms. Jones as a participant in the CETA program failed to exhaust her administrative remedies prior to utilizing the procedures outlined in subpart C of 29 C.F.R. Part 98; (2) that the ALJ's finding that the City had violated the notice provisions of 29 C.F.R. § 98.26 is based on a misinterpretation of the regulation and is not supported by substantial evidence; (3) that the ALJ's finding number three that the City had intimidated and coerced Ms. Jones in violation of 29 C.F.R. § 98.45(b) is based upon a misinterpretation of the regulation and is not supported by substantial evidence; (4) that the City made a bona fide job offer to Ms. Jones on at least two occasions after her termination, both of which were rejected by Ms. Jones, and that her rejection of these offers precludes Ms. Jones from receiving an award of back pay; and (5) that reinstatement and back pay are improper remedies even if this court finds that the City violated the grievance procedures set forth in 29 C.F.R. Part 98. For reasons to be stated, we reverse.

Vivian Jones, a black female, was hired on January 3, 1978 as a CETA-funded secretary-receptionist in the Pine Bluff City Attorney's office. Her immediate supervisor was Robert Tolson, the City Attorney.

On or about December 27, 1978 Ms. Jones was involved in an incident with Becky Brown, the Mayor's secretary. Ms. Brown reported the incident to the Mayor. As a result, the Mayor wrote a memo to Mr. Tolson, reprimanding Ms. Jones. This memo did not reach Mr. Tolson until January 2, 1979, when he returned from vacation. A copy of the memo was placed in Ms. Jones' personnel file.

---

[*] The Honorable William R. Collinson, United States Senior District Judge, Western District of Missouri, sitting by designation.

It would appear that Ms. Jones first read a copy of the memo on January 2, 1979 when Mr. Tolson asked her to give him a written report of the "Becky Brown" incident. On January 4, 1979 Mr. Tolson again requested a written report. Ms. Jones responded by handing him a typed letter, addressed to him, dated January 3, 1979. The letter was two sentences long. It denied the allegations in the Mayor's memo, requested that the memo be removed from her personnel file, and requested a hearing. Mr. Tolson again requested a report, and assured Ms. Jones that she would get her hearing notwithstanding his request. She again refused. He then gave her a direct order for the report, which order was also refused.

On the afternoon of the same day, Mr. Tolson drafted a letter to Rhonda Creacy, the director of the CETA program of the City, requesting that Ms. Jones be transferred out of his department for willful failure to follow instructions, and for insubordination in that she had refused to comply with his proper order. He handed the draft to Ms. Jones for typing, and she started to type it. Prior to finishing the letter, however, she removed it from the typewriter and returned it to Mr. Tolson, stating that she did not have to type it. The letter was subsequently typed by another secretary.

On January 10, 1979, as part of the City's informal grievance procedure, the Assistant City Attorney conducted an informal interview with Ms. Jones concerning the Becky Brown incident. On January 17, 1979 he wrote a letter to Ms. Creacy stating that he had been unable to interview Becky Brown and was therefore unable to substantiate the allegations contained in the Mayor's memo. He therefore rendered a decision that the memo should be removed from Ms. Jones' personnel file. The Mayor's memo was later removed from her file at the direction of the Mayor.

The difficulties arising out of the incident of January 4, 1979, however, continued. It appears that Mr. Tolson had been assured by Ms. Creacy that Ms. Jones would be transferred pursuant to his request. Several weeks subsequent to the January 4 incident, however, he was informed that Ms. Jones would not be transferred. He then terminated Ms. Jones on February 12, 1979 for the reasons expressed in his letter of January 4.

On February 14, 1979 a hearing regarding Ms. Jones' termination was conducted before the State of Arkansas Equal Employment Opportunity Officer, who found that the coercion provisions of 29 C.F.R. Part 98 had been violated. After further administrative proceedings, a hearing was conducted before the ALJ, and a decision was rendered. This petition followed.

At the outset, we note that 29 U.S.C. § 817(a) (1978) confers upon this court the jurisdiction to hear this petition. We also note that the applicable standard of review of the ALJ's decision is set forth in 29 U.S.C. § 817(b), which provides as follows:

(b) The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case to the Secretary in whole or in part to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

29 U.S.C. § 817(b) (1978). With this standard of review in mind, we address the City's contentions on appeal.

■ The City first contends that Ms. Jones failed to exhaust her administrative remedies prior to her utilization of the procedures established by the City pursuant to the C.F.R. regulations in question. We note, however, that the ALJ specifically found that the City had offered no evidence in support of this contention. Furthermore, although from the record on appeal it is not clear that Ms. Jones mentioned a second, specific grievance regarding Mr. Tolson's letter of January 4, 1979, the ALJ apparently found it necessary to consider and deal with the January 4 incident as it related to her grievance arising from the May-

or's December 28, 1978 memo. In the circumstances, we are unwilling to disturb the ALJ's finding in this area.

██ The City next contends that the Secretary's finding that the City failed to provide Ms. Jones with proper notice in violation of 29 C.F.R. § 98.26 was based on a misinterpretation of the regulation and is not supported by substantial evidence. We agree.

> 29 C.F.R. § 98.26(a) provides as follows: (a) Each prime sponsor or eligible applicant shall establish a procedure for resolving any issue arising between it (including any subgrantee or subcontractor of the prime sponsor) and a participant under any Title of the Act. Such procedures shall include an opportunity for an informal hearing, and a prompt determination of any issue which has not been resolved. When the prime sponsor or eligible applicant takes an adverse action against a participant, such procedures shall also include a written notice setting forth the grounds for the adverse action and give the participant an opportunity to respond.

29 C.F.R. § 98.26(a).[1] It is clear from a plain reading of this provision that it is the procedures to be established by the prime sponsor, and not the notice itself, that must afford the participant an opportunity to respond.

The respondent, however, contends that Ms. Jones should have been notified *before* any adverse action was taken, although it concedes that the above cited regulation does not expressly impose such a condition. In addition, respondent apparently also contends that such notice must be directed to the participant against whom the adverse action is contemplated. Again, however, an application of the provision set forth above and of sound public policy indicates that these contentions are without merit.

First, the provision in question states that notice shall be given "when" the adverse action is "taken." *See Maloney v. Sheehan*, 453 F.Supp. 1131 (D.Conn.1978).[2] Although we assume, without deciding, that the Mayor's memo constituted an adverse action, it seems clear that the purpose of the notice provision is to give a participant notice that adverse action is being taken, and notice of the specific grounds therefor, so that the participant will be able to properly rebut such allegations and to utilize the grievance mechanisms provided for such rebuttal. *Cf. City of Boston v. Secretary of Labor*, 631 F.2d 156, 160 (1st Cir. 1980).[3] The record shows that this purpose was adequately effected, notwithstanding the fact that Ms. Jones first received notice of the Mayor's memo after Mr. Tolson received it.

Respondent's second contention, that notice must be typewritten and/or directed to the adversely affected participant, is also unpersuasive. First, the above cited provision imposes no such requirements on its face. Second, the purpose of the provision, as set forth above, has been adequately effected in this case.

Thus, with regard to the memo written by the Mayor, the evidence that Ms. Jones timely filed a grievance concerning that memo, and that the memo was subsequently removed from her personnel file, indicates that the purpose of the notice provi-

---

1. We note that no Constitutional or discrimination issues have been raised or argued in this appeal. Accordingly, we treat this matter as one of statutory interpretation only.

2. We note that the district court in *Maloney* held that notice was required, under the forerunner of the present regulation, *before* the adverse action was taken. *Id.* at 1137. The former regulation, however, then read, "When the prime sponsor or eligible applicant *proposes* to take an adverse action against a participant, such procedures shall also include a written notice . . . ." (emphasis supplied). That court also noted that under the current regula-

tion, written notice may be provided at the time that an employee is terminated. *Id.* at 1135 n.4.

3. In *City of Boston*, the First Circuit held that the regulation requires an opportunity to confront the decision-maker with evidence and arguments in support of the participant's position. *Id.* Such an opportunity, of course, presupposes that the participant has knowledge of the adverse action, and that the participant has knowledge of the specific allegations that he is confronting.

sion was properly effected by Ms. Jones' receipt of a copy of the memo, even though she was not the person to whom the memo was directed.

In addition, although we assume, without deciding, that the letter of January 4, 1979 constituted a second adverse action which is properly before us on appeal, the evidence shows that Ms. Jones had received a longhand draft of the letter in circumstances which clearly show that she had read the draft and was aware of its contents. We are not prepared to hold that the purposes of the notice provision of the regulations have not been adequately effected in the circumstances. Accordingly, we find good cause to reverse the ALJ's findings relating to notice.

■ The City's third contention on appeal is that the Secretary's finding that the City had coerced and intimidated Ms. Jones in violation of 29 C.F.R. § 98.45(b) is based on a misinterpretation of the statute and is not supported by substantial evidence. With this contention we also agree.

29 C.F.R. § 98.45(b) provides:

(b) No grantee, participant, respondent or other persons shall intimidate, threaten, coerce, or discriminate against any individual *for the purpose of* interfering with any right or privilege secured by the Act, the regulations, the grant, or the application of an eligible applicant *because* he has made a complaint, formal allegation, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part. The identity of every complainant shall be kept confidential except to the extent necessary to carry out the purpose of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.

29 C.F.R. § 98.45(b) (emphases supplied).

The ALJ set forth three occurrences which he considered to be coercive, namely, (1) Mr. Tolson's "demand" for a report of the Becky Brown incident; (2) his letter of January 4, 1979, requesting that Ms. Jones be transferred; and (3) his subsequent termination of Ms. Jones on February 12, 1979.

The record on appeal indicates that on January 2, 1979 Mr. Tolson returned from vacation and found a copy of the Mayor's memo on his desk. He showed a copy of the memo to Ms. Jones and asked her to write a report about the incident. The testimony of both Mr. Tolson and Ms. Jones clearly indicates that he wanted her to report her own version of the incident. It is also clear that the initial request was made before he had any knowledge of an intention on her part to file a grievance. Accordingly, we find that his initial request was not motivated by an intention to interfere with the grievance process; to the contrary, it appears that Mr. Tolson, as a supervisor, was quite properly requesting from his secretary her version of an incident involving her that had occurred in his absence. Ms. Jones refused to comply with this request.

Furthermore, although Mr. Tolson did become aware of the pendency of a grievance proceeding when he again requested the report on January 4, it is clear that he assured Ms. Jones at that time that the grievance procedure would be followed notwithstanding his request for her report. It would thus appear that Mr. Tolson had repeatedly and unsuccessfully requested a report from Ms. Jones, and that Ms. Jones had no legitimate reason for refusing to carry out that request. In the circumstances, his direct order for the report was clearly motivated by her repeated refusal to supply it, and not by an intent to thwart the pending grievance proceeding by harassing Ms. Jones. The record further shows that the letter of January 4 requesting her transfer was similarly motivated. *See Harnett v. Ulett,* 466 F.2d 113 (8th Cir. 1972); *Galaway v. Lawson,* 438 F.Supp. 968, 973–74 (D.Minn.1976), *aff'd,* 565 F.2d 542 (8th Cir. 1977). Accordingly, we find that neither his order directing that she write a report nor the letter of January 4 constituted coercion or intimidation for the purpose of interfering with the grievance proceeding.

In addition, the record discloses that Mr. Tolson did not terminate Ms. Jones until

after he had learned that she would not be transferred. In the circumstances, we conclude that her discharge was motivated by her repeated refusal to comply with Mr. Tolson's requests and orders of January 2 and 4, and by the refusal, on the part of the CETA personnel, to transfer her. We therefore find that there is also good cause to reverse the ALJ's finding number three.

■ Although our findings to this point effectively dispose of this petition, we also note that on February 23, 1979 the City had offered Ms. Jones CETA employment in a substantially similar position in a different office. Although it is true that the position offered was described as "temporary," the record discloses that Ms. Jones' CETA eligibility expired on October 1, 1979, and that her tenure in the offered position would have lasted until September 30, 1979.[4] Furthermore, although respondent argues that the position offered was not the same position in the City Attorney's office, it is clear that Ms. Jones did not wish to return to that position.

Thus, even had we found that the City's termination of Ms. Jones on February 12, 1979 had been in violation of the above cited regulations, it would appear that her right to back pay past February 23, 1979 had been effectively waived by her refusal to accept the position offered on that date. *See City of Boston v. Secretary of Labor*, 631 F.2d 156, 161 (1st Cir. 1980).[5]

For the foregoing reasons, we reverse.

---

**4.** We note that the period ending on October 1 is a maximum period and that there is no guaranteed minimum period of CETA employment. *Hark v. Dragon*, 477 F.Supp. 308, 313 (D.Vt.), *aff'd*, 611 F.2d 11 (2d Cir. 1979).

**5.** The First Circuit stated:
The parties are entitled to a reasoned evaluation of the problem in light of specific facts, rather than an automatic and broadscale invocation of a discretionary remedy that should turn on the particular circumstances. Before assessing back pay, the Secretary

should be satisfied, and give his reasons why, such an award is necessary and appropriate to vindicate the precise right of which [the participant] was deprived.

*Id.* at 161 (citations omitted). Although that court did not fully outline the particular circumstances to be considered, we suggest that the rejection of an offer of substantially similar employment is an appropriate factor to be considered in delineating the extent of an award of back pay.