**CITY OF CHICAGO, a municipal corporation, and Police Department of the City of Chicago, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 83–1421.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1984.

Decided June 18, 1984.

Pell, Circuit Judge, concurred in part, dissented in part, and filed opinion.

Robert J. Dargis, Corp. Counsel, Chicago, Ill., for petitioners.

Louise L. Cavanaugh, Dept. of Labor, Washington, D.C., for respondent.

Before CUMMINGS, Chief Judge, and PELL and CUDAHY, Circuit Judges.

CUMMINGS, Chief Judge.

The City of Chicago and its Police Department, prime sponsor and subgrantee respectively under the now-repealed Comprehensive Employment and Training Act of 1973 ("CETA"), 29 U.S.C. §§ 801–992,[1] petition for review of the decision made by the Secretary of Labor after this Court's order, 681 F.2d 819, vacating the Secretary's earlier final decision and remanding the cause for further proceedings. Petitioners argue that the Secretary was without authority to order the City of Chicago to pay back wages to a CETA employee terminated for cause but in a manner that violated CETA regulations.

## I. Background

On July 21, 1976, the Chicago Police Department (hereinafter jointly referred to with the City of Chicago as the city) terminated Jerome Whaley from a position he had held as a CETA employee since January 13, 1975. In the year and a half he was employed by the city under the CETA program, Whaley had been absent on sick leave or leave without pay 85 days and had taken 11 vacation days. The city suspended Whaley on three separate occasions for

---

1. CETA, originally enacted in 1973, was amended in 1978 by Pub.L. 93–567, 94–444, 95–524. The administrative proceeding below and this proceeding arise under the 1978 amendments to CETA, Pub.L. 95–524, 92 Stat. 1909. Although CETA was repealed effective October 13, 1982, the replacement statute, the Job Training Partnership Act, specifically provides that no part of the new statute will affect judicial review proceedings under CETA, like this one, which have been begun before September 30, 1984. 29 U.S.C. § 1591(e).

three apparently unrelated failures to observe proper procedures when not reporting for duty.[2] On each of these occasions the city complied first with procedures requiring prior notice to the employee of the reasons for the proposed discipline and a pre-disciplinary opportunity for a hearing. However, when the city terminated Whaley because of his overall poor attendance, it did not comply with these procedures. Upon returning from a vacation, Whaley learned of his termination from a co-worker and was not given any written or other official notification of the reason for his termination at that time.

Whaley filed a complaint with the Chicago Mayor's Office of Manpower fourteen months later, on September 28, 1977, and a hearing was held still another fourteen months later, on November 21, 1978, after which the city's termination was upheld. Apparently, the reasons for his termination were revealed to Whaley for the first time at this hearing. Pursuant to a complaint Whaley issued with the United States Department of Labor, an Administrative Law Judge (ALJ) conducted a hearing on stipulated facts, determining that although there was just cause for Whaley's termination, the city violated 29 C.F.R. § 98.26(a) (1976)[3] when it failed to give Whaley both

notice of its action and an opportunity to respond before the termination was effected. Consequently, the ALJ ordered the city to pay Whaley back wages, less other wages earned, from the July 21, 1976 termination to the November 21, 1978 hearing date. This back pay award amounted to $24,164.01.[4]

Pursuant to 29 U.S.C. § 817(a) (Supp. II 1978),[5] the city petitioned this Court for review of the award. The city admitted that it violated CETA regulations but contended that back pay was not a proper remedy for this violation since Whaley's termination was for cause and a hearing was ultimately conducted. Alternatively, the city agreed that even if back pay could be properly awarded, the ALJ's $24,164.01 award was excessive.

In an unpublished order, issued on April 8, 1982, this Court vacated the ALJ's decision and order and remanded the cause to the Secretary of Labor for further proceedings. We directed the Secretary to consider whether or not the city's violation caused Whaley any loss for which he was entitled to be made whole, and, if it did, whether or not back pay was the proper make-whole remedy. Upon reconsideration, the Secretary determined that the

---

**2.** The record does not indicate that the city disciplined or even counselled Whaley on these occasions or at any other time for his concededly poor attendance itself.

**3.** 29 C.F.R. § 98.26(a) (1976) provided as follows:

> § 98.26 Procedures for resolving issues between grantees and complainants.
> (a) Each prime sponsor or eligible applicant shall establish a procedure for resolving any issue arising between it (including any subgrantee or subcontractor of the prime sponsor) and a participant under any title of the Act. Such procedures shall include an opportunity for an informal hearing, and a prompt determination of any issue which has not been resolved. When the prime sponsor or eligible applicant proposes to take an adverse action against a participant, such procedures shall also include a written notice setting forth the grounds for any adverse action proposed to be taken by the prime sponsor or eligible applicant and giving the participant an opportunity to respond.

**4.** This award was comprised of $30,417 in CETA wages which Whaley would have earned had he continued to be employed under CETA until the hearing, less $6,252.99 in earnings from other employment (March 4, 1981 Supplemental Decision and Order of the Administrative Law Judge).

**5.** 29 U.S.C. § 817(a) provided as follows:

> § 817. Judicial review
> (a) If any prime sponsor is dissatisfied with the Secretary's final action with respect to the disapproval of its comprehensive employment and training plan under section 814 of this title, or if any recipient is dissatisfied with the Secretary's final action with respect to a sanction under section 816 of this title, or if any interested person is dissatisfied with or aggrieved by any final action of the Secretary authorized under section 816 of this title, such prime sponsor, recipient, or person may, within 60 days after notice of such action, file with the United States court of appeals for the circuit in which the prime sponsor, recipient, or person resides or transacts business a petition for review of such action.

city's violation of CETA's regulations had caused Whaley actual loss, since even though Whaley would have been ultimately terminated for cause, he would have remained employed in the city's CETA program beyond his July 21, 1976 termination date if the city had used procedures required by CETA regulations. The Secretary determined that awarding back pay therefore promoted the purposes of CETA. However, the Secretary found excessive the award of back pay for the entire twenty-eight month period between Whaley's termination and the hearing ultimately conducted, since the city's procedural violation was not the cause of all Whaley's lost wages during that entire period. The Secretary determined that Whaley was entitled to back pay from the date of termination until December 31, 1976, and ordered the city to pay Whaley $5,500, less legal deductions.

## II. Jurisdiction

On December 1, 1982, the Secretary issued [6] the decision which the city now challenges, and certifies that it was mailed to the city on that date. The city claims, and the Secretary does not seriously challenge, that it received the decision on December 6, 1982. The city initially submitted a petition for review to this Court on February 3, 1983, when it was stamped "Received" by the Clerk's office. However, because the city had failed to include the docketing fee, the Clerk's office returned the petition to the city four days later. The city ultimately paid the docketing fee on March 10, 1983.

This Court's jurisdiction to review the Secretary's decision arises under 29 U.S.C. § 817(a) (Supp. II 1978), reproduced at note 4 *supra*, which provides that persons dissatisfied with the Secretary of Labor's "final action" with regard to certain CETA provisions "may, within 60 days after notice of such action, file with the United States court of appeals * * * a petition for review of such action." To determine if this Court has jurisdiction to review the Secretary's December 1, 1982 decision, we must decide if the city's submission on February 3, 1983 was a timely filing within the meaning of Section 817(a). We hold that it was and therefore that there is jurisdiction to review the Secretary's decision.

The city's February 3, 1983 submission occurred 59 days after the city received the Secretary's decision (December 6, 1982) but 64 days after the Secretary issued and mailed the decision (December 1, 1982). Thus, if, as the Secretary urges, the issuance and mailing were sufficient to give the city "notice" of the Secretary's action, the city's February 3 submission was untimely and insufficient to confer jurisdiction.

While language virtually identical to that in Section 817(a) appears in other statutes providing for judicial review of administrative actions (see, *e.g.*, 19 U.S.C. § 2395(a); 42 U.S.C. § 6869(a)), no cases have been located explaining the meaning of "notice" in Section 817(a) or these other similar provisions.[7] Furthermore, the cases which the parties urge us to apply analogously are not helpful, since they all interpret statutes with notice provisions significantly different from that in Section 817(a). For instance, the cases on which the city relies explicitly required actual receipt of notice to trigger appeal time limits. *Brown v. National Highway Traffic Safety Administration*, 673 F.2d 544 (D.C.Cir.1982) (construing 5 U.S.C. § 7703(b) which states "any petition for review must be filed within 30 days after the date the petitioner

---

**6.** The Secretary signed the decision on November 30, 1982 (see App. at A–8) and we are informed that is the date the decision was rendered. However, the Secretary does not contend that this date has any significance for jurisdictional purposes, relying instead on the December 1, 1982 issuance and mailing date.

**7.** In *Tyler v. Donovan*, 535 F.Supp. 691 (Ct.Int'l Trade 1982), the Court of International Trade

found timely under 19 U.S.C. § 2395(a) a civil action for review of an administrative determination filed 82 days after the determination was mailed. However, that decision turned on the fact that the administrative determination had never become a final action. That court did not reach the issue, relevant to the case before us, of whether or not mailing was sufficient to constitute notice of a final action.

received notice"); *Dent v. United States Postal Service*, 538 F.Supp. 1079 (S.D.Ohio 1982) (construing 42 U.S.C. § 2000e–16(c) which states "Within thirty days of receipt of notice * * * "). Section 817(a) does not explicitly require such actual notice. Similarly, *Wilson v. Shamrock Amusement Corporation*, 221 F.2d 687 (9th Cir.1955), is not apposite since it interprets 11 U.S.C. § 48(a),[8] repealed by the Bankruptcy Reform Act (November 6, 1978), which required service of written notice and filing of proof of service to trigger the appeals time limit. Section 817(a)'s notice requirements are somewhat less formal, in that they do not mandate written notice, legal service, or filing of proof of service.

The Secretary suggests that *Wilson* provides a basis for finding that the city here had constructive notice of the Secretary's decision on December 1, the date it was issued. We find no support in *Wilson* for such a conclusion. Section 48(a)'s requirement that appeals be filed within 40 days after entry of judgment imposed on an appellant constructive notice of the date judgment is entered. Section 817, on the other hand, rqeuires that a review petition be filed within 60 days after notice of the Secretary's action and not within 60 days after that action itself. To impose on the city constructive knowledge of the Secretary's action in issuing and mailing his determination would be to impose a duty beyond that imposed by Section 817(a) itself. Second, *Wilson's* determination that a person who has been served by mail notice of entry of judgment must appeal within thirty-three days after service (Section 48(a)'s time limits as extended under Fed.R.Civ.P. 6(e)'s three-day rule), also provides no basis for imposing on the city constructive notice of the Secretary's decision from the date of mailing. Section 48(a) explicitly requires the appeals deadline to be triggered by service of written notice. Section 817 does not require formal service or written notice. This cannot be

deemed an unintentional omission. The fact that Section 817(a) provides for review of a wide variety of actions of the Secretary, see *supra* note 4, indicates that Congress foresaw that a person seeking review of that action could obtain notice of the action in any of a variety of ways. Under these circumstances, it would be improper to construe notice as occurring. only when the Secretary mails his determination.

▪ When the language of Section 817(a) is reviewed in light of the language of the statutes construed in the cases cited by both parties, it is apparent that one has "notice" under Section 817(a) when he or she actually knows or has reason to know of the Secretary's final action. In this case, the city had actual knowledge of the Secretary's action on December 6, 1982. Furthermore, there is no indication that the city had any reason to know of the decision before that day. As explained at oral argument, the decision was not a published one. There is no claim that the city had in fact learned of the decision before December 6. And there is no evidence that the Secretary was required by statute or regulation to issue his decision by December 1; were this the case a duty of inquiry on the part of the city might have arisen. Absent evidence that the city should have known sooner of the Secretary's final decision, December 6, the date the city actually received notice, is the date which triggers Section 817(a)'s sixty-day limit for filing a review petition.

▪ Thus this Court has jurisdiction to review the Secretary's determination because the city's action on February 3, 1983, in delivering its petition to the Clerk who accepted it and stamped it "Received" constituted a filing of the petition within 60 days after notice of the Secretary's final action. The city's action was a filing despite the fact that the petition was returned to the city four days later because

---

**8.** Section 48(a) provided as follows:

Appeals under this title to the United States courts of appeals shall be taken within thirty days after written notice to the aggrieved party of the entry of the judgment, order or

decree complained of, proof of which notice shall be filed within five days after service or, if such notice be not served and filed, then within forty days from such entry.

the docketing fee had not been paid. It is well settled that a notice of appeal or a petition for review is filed once the Court of Appeals receives actual custody of the document. *Graves v. General Insurance Corp.*, 381 F.2d 517, 519 (10th Cir.1967); *Kahler-Ellis Company v. Ohio Turnpike Commission*, 225 F.2d 922 (6th Cir.1955). When this Court's Clerk accepted the petition and stamped it received on February 3, the petition was timely filed and the conditions prescribed under Section 817(a) for this Court to assume jurisdiction had been satisfied.

■ The subsequent return of the petition for non-payment of the docketing fee had no effect, of course, on the validity of the jurisdiction conferred on February 3. Untimely payment of a docketing fee does not affect the validity of an appeal notice or a petition for review. *Parissi v. Telechron*, 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867; *B.J. McAdams, Inc. v. Interstate Commerce Commission*, 551 F.2d 1112, 1115 n. 2 (8th Cir.1977).

### III

On April 8, 1982, we remanded this cause to the Secretary of Labor to reconsider whether or not his $24,164.01 back pay award was a proper remedy for the city's termination of Whaley for cause but without full compliance with relevant CETA regulations. We directed the Secretary to consider all the factors surrounding the termination, and especially whether or not the CETA violation was merely a technical one which caused Whaley no harm, to determine if the back pay award was excessive or perhaps even unwarranted altogether.

In light of this remand order, the Secretary determined that even though the city had ample justification for its ultimate termination of Whaley, its failure to provide Whaley with prior notice of the reasons for his termination and an opportunity for a hearing before terminating him caused Whaley actual loss. Had the city complied with the CETA regulations, "there is no doubt that Mr. Whaley would have been employed for some longer period of time beyond July 21, 1976," his actual termina-

tion date (App. at A–5). Since the purposes of CETA are served by making a CETA employee whole for loss suffered as a result of the city's violation of CETA procedures, awarding Whaley back pay for that "longer period of time" was appropriate under CETA. The Secretary then calculated the actual amount of back pay, considering the factors surrounding the termination and subsequent hearing, and decided that Whaley's earlier $24,164.01 award should be reduced to $5,500 less legal deductions.

### A

■ Because Whaley's termination was for cause, the right of which he was deprived was the right to challenge his termination rather than the right to continued CETA employment. Therefore, while he was entitled to be made whole for any loss which resulted from the procedural violation, he was not entitled to recover for any loss resulting from the termination itself. Cf. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252.

■ In this case, the loss which resulted from the procedural deprivation is the loss of the opportunity to continue employment as a CETA employee until notice and a hearing had taken place. The appropriate measure of this loss is in terms of back pay. However, relying on *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, and on *County of Monroe v. United States Department of Labor*, 690 F.2d 1359 (11th Cir.1982), the city argues that back pay may not be awarded where an employee's termination for cause is effectuated in a procedurally defective way, because back pay in such a case is a windfall rather than compensation. The city argues that only proven damages for emotional distress or some injury other than loss of back pay may be awarded to remedy the procedural violation. But a careful analysis of the cases on which the city relies shows that back pay is an appropriate remedy for a violation of CETA's termination procedures where, as here, the loss of pay was caused by the violation itself rather than by the justified termination.

In *Carey v. Piphus*, the Supreme Court applied traditional tort causation principles

to determine what damages were recoverable by high school students suspended without procedural due process. Where the suspensions were justified, the Court assumed they would have occurred even with procedural due process so that the absence of due process could not be the actual cause of the suspension because the students would have missed the same number of school days in any case.[9] Consequently, injuries resulting from the justified suspension (such as pecuniary loss due to absence at school and loss of reputation) were caused by the students' conduct which gave rise to the suspension rather than to the due process deprivation and could not be the source of damages recoverable in a Section 1983 action brought to remedy the procedural deprivation.

In *County of Monroe*, a panel of the Eleventh Circuit, applying *Carey*, decided that a CETA employee terminated for cause but in a procedurally defective manner could not recover back pay, since its loss was due to the employee's conduct resulting in the termination rather than to the procedural defect. The County had terminated a CETA employee but delayed fourteen months in holding a hearing, thereby violating CETA's "prompt determination" requirement. 29 C.F.R. § 98.26 (1976). The court noted the ALJ's determination that the employee would likely have been terminated even with a prompt hearing and that the employee was deprived only of a "learning experience" when the CETA procedures were not followed.

*Monroe, supra,* 690 F.2d at 1362. Significantly, there was no determination that the County's compliance with CETA procedures would have caused the employee to remain on the payroll for "some longer period of time" (App. at A–5).

The Eleventh Circuit correctly decided that CETA procedures "are to insure and protect substantive rights" and have no "independent educational value." 690 F.2d at 1362. Actual compensable injury caused by the due process deprivation itself rather than the justified termination is necessary before the terminated CETA employee may recover more than nominal damages for the due process deprivation. *Id.* at 1363 (citing *Carey, supra*). Since such actual compensable injury had not been shown, "the payment of back pay here would be a windfall, not a make-whole compensation." 690 F.2d at 1362.

When the facts in Whaley's case are viewed in light of *Carey*[10] and *Monroe*, it is clear that back pay is an appropriate remedy for the violation of CETA procedures in this case. Unlike the students in *Carey* and the CETA employee in *Monroe*, Whaley's loss is directly attributable to his procedural deprivation rather than to the conduct which caused the justified termination.[11] The Secretary found that even though Whaley ultimately would have been terminated even with appropriate procedures, that termination would have occurred sometime after July 21. This finding is supported by substantial evidence

9. In the case before us, Whaley would not have lost the same number of workdays had the termination been procedurally proper. As the Secretary noted, with proper procedures, "Whaley would have been employed * * * for some longer period of time" (App. at A–5).

10. *Carey*, of course, decided issues arising under Section 1983 and not under the CETA program. Although the Supreme Court made passing reference to cases in which public employees were terminated for cause but without proper procedures, those cases also arose under Section 1983 and not under CETA. 435 U.S. 247, 260 n. 15, 98 S.Ct. 1042, 1050 n. 15, 55 L.Ed.2d 252 and cases cited therein. We assume *arguendo* that *County of Monroe*'s determination that *Carey* is "controlling" in CETA cases is a correct one. 690 F.2d at 1362, 1363.

11. For similar reasons, Whaley's case is distinguishable from *City of Boston v. Secretary of Labor*, 631 F.2d 156 (1st Cir.1980) and *City of Pine Bluff, Arkansas v. United States Department of Labor*, 658 F.2d 577 (8th Cir.1981), to which we referred in our April 8, 1982 remand order. In *City of Boston*, the court determined that a procedurally proper termination could have taken place when the improper termination in fact occurred, 631 F.2d at 161. In *City of Pine Bluff*, the termination complied with the spirit if not the letter of the CETA regulations so that the "technical" violation of the regulations in fact caused no injury, especially since the employee refused the city's subsequent reemployment offer. 658 F.2d at 581–582.

and therefore must be affirmed on appeal. *Universal Camera Corporation v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; 29 U.S.C. § 817(b). There is no evidence that the city could have effected a procedurally proper termination on July 21. Furthermore, the fact that the city required at least six weeks to effect procedurally correct uncontested suspensions of Whaley (Joint Exh. 3, 4; Resp.Exh. 1) lends additional support to the Secretary's finding that "Whaley would have been employed * * * for some longer period of time * * * if proper procedures had been followed [so that] his damages are the pay he would have earned for that period" (App. at A–5). Because Whaley has shown actual loss of pay arising from the procedural deprivation, this Court holds that back pay is an appropriate "make whole" remedy.

### B

In his reconsideration decision, the Secretary explained that the city's failure to provide Whaley with pretermination notice and an opportunity to respond was not harmless error, because these failures affected the "fundamental fairness" of the termination procedures (App. at A–5). Since this procedural error caused Whaley to be terminated before he would have been if proper procedures had been followed, and since this error caused Whaley to lose the CETA wages he would have earned during the period necessary to implement proper procedures, Whaley suffered actual loss as a result of the error. Awarding back pay in such cases will "carry out the purposes of CETA by making the participant whole for the loss suffered * * * and at the same time spur CETA recipients to comply with the regulations" (App. at A–3 to A–4). The Secretary then found that Whaley had no actual notice on the July 21 termination date of the reasons for his termination, so that a back pay award, albeit a lesser one than the previous $24,164.01 award, was appropriate in Whaley's case to promote CETA purposes.

In its reply brief, the city contends that the Secretary's award should be vacated because a back pay award to a CETA employee terminated for cause but in a procedurally defective manner does not promote CETA's purpose to provide job-training opportunities for the economically disadvantaged. However, the Secretary of Labor has been delegated broad authority to promulgate regulations to make possible accomplishment of Congressional purposes and broad discretion in fashioning remedies where, as here, the Act or these regulations have been violated (29 U.S.C. § 818(b)(2)). To succeed in a claim that the Secretary's back pay remedy does not fulfill the purposes of CETA, the city must show that "the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act," *Virginia Electric & Power Co. v. N.L.R.B.*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568. It cannot seriously be argued that the Secretary exceeded his authority in promulgating regulations imposing basic due process requirements on employers seeking to discipline CETA employees. Similarly, an award of back pay to an employee harmed by the violation of those regulations is an appropriate exercise of the Secretary's remedial discretion, since such an award serves both to recompense the employee and to deter employer disregard of regulations.

The city argues that *Commonwealth of Kentucky, Department of Human Resources v. Donovan*, 704 F.2d 288 (6th Cir. 1983), mandates a determination that the award of any back pay to Whaley violates the purposes of CETA. However, in that case a panel of the Sixth Circuit agreed that the Department of Labor's position that "back pay awards are a proper remedy [in CETA cases] when circumstances require * * * is, we believe, consistent with and in accordance with the purposes of the CETA program." *Id.* at 296. In *dicta*, the court commented on the judiciary's reluctance to award back pay when such an award would not further CETA's purposes, "as when the discharge is proper but the procedure is technically deficient." *Id.*, citing *County of Monroe, supra; City of Great Falls v. Department of Labor*, 673 F.2d 1065 (9th Cir.1982); *City of Boston, supra.*

Of course, as discussed above, these cases, to the extent they are relevant to our inquiry,[12] disapproved back pay as a remedy where the procedural defect had not caused the loss of wages. In *Monroe*, the court determined that the procedural defect did not cause the lost wages so that back pay was not a proper remedy; in *Boston*, the court remanded the cause to the Secretary for a determination of whether the procedural defect was the cause of the lost wages. These cases did not decide that a back pay award can never serve CETA purposes when a justified termination was procedurally defective and the Sixth Circuit's comment cannot fairly be understood to conclude that they did.

The city's argument that the Secretary's award may be vacated because it does not serve CETA's purposes is rejected.

### C

The Secretary determined that Whaley's damages are the pay he would have earned for the "longer period of time beyond July 21, 1976" that he would "no doubt" have been employed if the city had used proper procedures to terminate him (App. at A–5), *i.e.*, until December 31, 1976 (App. at A–8). The Secretary granted back pay of $5,500, less legal deductions. This finding of fact must be affirmed if it is supported in the record by substantial evidence. 29 U.S.C. § 817(b) (Supp. II 1978). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842; see also *Bloomer Shippers Association v. I.C.C.*, 679 F.2d 668, 672 (7th Cir.1982).

It is true that the Secretary could have been more articulate in describing the calculations upon which he based his finding that Whaley was entitled to 5⅓ months back pay. Nevertheless, his discussion clearly shows his determination that the city's failure to use proper procedures

caused only this loss; Whaley's own conduct caused any additional loss he suffered. The Secretary noted Whaley's fourteen-month delay in filing his complaint and Whaley's responsibility for part of the delay in scheduling the hearing. The absence of evidence that Whaley or his attorney had pressed for a statement of reasons before the hearing, coupled with their failure to protest the termination or reasons for it at the hearing, led the Secretary to infer "either that Mr. Whaley found out the reasons for his discharge some time before the hearing but did not challenge them because he had no defense, or that he deliberately chose to remain ignorant of them" (App. at A–7). Finally, the Secretary took into account Whaley's poor attendance record before the termination and adjusted the back pay award accordingly.

These factors expressly considered by the Secretary were all matters of record and, taken together, provide a sufficient basis for his $5,500 back pay award. That award may not be overturned merely because the Secretary did not explicitly find how many months of pay lost under each factor were caused by Whaley's conduct. The Secretary's aggregate determination was sufficient.

### IV

For all the above reasons, the Secretary's Decision on Remand is affirmed.

PELL, Circuit Judge, concurring in part and dissenting in part.

Although I concur in that part of the majority opinion finding jurisdiction for this appeal, I am unable to do likewise for what I regard as the anomalous holding that Whaley was entitled to back pay for five and one-third months of nonwork because of procedural deficiency in his fully justified termination from the CETA Program in which he now and then had participated. I therefore respectfully dissent.

It seems to me that little more should be needed to demonstrate the incorrectness of

---

**12.** *City of Great Falls*, 673 F.2d 1065 (9th Cir. 1982), is not relevant here. In that case, a Ninth Circuit panel decided that the 1978

amendments to CETA regulations could not be applied retroactively to allow a back pay award.

the Secretary's decision than to state the pertinent facts even though there is more in that this Court is taking a position contra to well established authority.

Whaley was hired under the CETA Program in January 1975. During the next year and a half he was absent nearly 100 days. He was suspended three different times because of violation of rules relating to attendance, each of which apparently would have been a valid cause for termination. He had notice of these prior complaints on attendance yet the Secretary in his decision makes the startling statement that "the record does not indicate that, as bad as his overall attendance was, Mr. Whaley was ever warned about it or reprimanded for it." Three suspensions would seem to be a crying-out rather than a mere indication. Surely on this record Whaley could not have been oblivious of the supervisory dissatisfaction with his attendance record nor of the reason for his ultimate termination when that occurred after his return from a vacation which he had extended by not reporting to work on July 3 and 11 in order to lengthen his vacation days.

After he learned of his termination he took no steps to challenge his status for fourteen months. The Secretary in what I can only regard as a tribute to bureaucratic ingenuity in dispensing the fisc to the detriment of the public, and after the case was remanded to him on April 8, 1982 with the admonition that before assessing back pay he should be satisfied and give his reasons vindicating any award of back pay, nevertheless seized upon the bizarre rationale that if termination notice had been properly given Whaley somehow could have hung onto the position he didn't deserve until the end of the calendar year for a total of five and one-third months.

*Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) had been on the books for four years at the time of the Secretary's decision and although on its facts it is not directly applicable, its teaching and spirit would seem clearly to indicate that back pay as such was not authorized but only at best nominal damages if they were justified under all the circumstances. The record does not demonstrate any mental or emotional distress incurred by Whaley and, indeed, his fourteen months of inaction suggest the contrary. The only rationale for the award of the Secretary was the bald assertion unsupported in the record that the CETA termination procedure would consume nearly a half a year.

Aside from *Carey v. Piphus,* I regard *County of Monroe v. United States Department of Labor,* 690 F.2d 1359 (11th Cir.1982), as directly contrary and indistinguishable from the present case. What the Secretary has done and this Court has approved is in the wording of *Monroe* awarding a windfall and allowing "the procedural tail to wag the substantive dog," *id.* at 1362–63. Unfortunately, *Monroe* did not exist at the time of this court's remand on April 8, 1982, and apparently although it had been on the books a part of a month before the Secretary's decision he either was unaware of it or ignored it.

The majority opinion states that the right of which Whaley was deprived was the right to challenge his termination rather than the right to continue CETA employment. This is a fine distinction in view of the Secretary's decision and, indeed, it is so fine it escapes me because the record demonstrates that his right to challenge the termination was an empty shell without substance. The majority opinion further observes that Whaley was not entitled to recover for any loss because of the termination itself. Yet that is exactly what the Secretary did. The inescapable consequence of the Secretary's decision is that Whaley will be compensated just as though he had been performing his job without his usual absences. The meable circuitry of the process by which the Secretary reached his conclusion should be called what it is, merely a circumvention of the prohibition of back pay under *Monroe* and its sequelae. I am unable to find either in the Secretary's decision or the majority opinion any basis to believe that an award of back pay to Whaley will effectuate the purposes of the CETA program as required by law. *See Commonwealth of Kentucky, Depart-*

*ment of Human Resources v. Donovan,* 704 F.2d 288, 296 (6th Cir.1983); *Monroe, supra,* at 1362–63; 20 C.F.R. § 676.91(c) (1980).

I also note that the majority opinion states the Secretary's finding that the termination would have occurred sometime after July 21 was supported by substantial evidence and, therefore, must be affirmed. The problem is that the Secretary's finding went farther than that and was that he would not have been finally terminated for a full five and one-third months. Even if we were to assume that somehow the process could have kept him on the public payroll for a short time, there is no support in the evidence whatsoever that this period would have been for nearly a half a year.

I can only regard this Court's approval of the Secretary's decision as an unfortunate invitation to persons in similar positions to engage in dilatory tactics to keep undeserved pay checks flowing to them. In this case $5,500 has no basis in fact or in law.