# Illinois Official Reports

## Appellate Court

---

### *Key v. Aurora Housing Authority*, 2020 IL App (2d) 190440

---

| | |
|---|---|
| Appellate Court Caption | MICHELLE KEY, Plaintiff-Appellee, v. THE AURORA HOUSING AUTHORITY and KEITH L. GREGORY, in His Official Capacity as Executive Director of the Aurora Housing Authority, Defendants-Appellants. |
| District & No. | Second District<br>No. 2-19-0440 |
| Filed | March 17, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 16-MR-421; the Hon. Mark A. Pheanis, Judge, presiding. |
| Judgment | Order vacated. |
| Counsel on Appeal | Richard T. Petesch and Bernard K. Weiler, of Mickey, Wilson, Weiler, Renzi, Lenert & Julien, P.C., of Sugar Grove, for appellants.<br><br>Fred M. Morelli Jr. and Nischal Raval, of Morelli & Raval, of Aurora, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Schostok and Bridges concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendants, the Aurora Housing Authority (AHA) and its executive director, Keith L. Gregory, appeal from an order of the circuit court of Kane County finding that plaintiff, Michelle Key, was entitled to housing assistance payments for a period of 22 months after a hearing officer upheld the AHA's decision to terminate her benefits. We vacate the order.

## I. BACKGROUND

¶ 2

¶ 3    The AHA administers housing assistance benefits through the United States Department of Housing and Urban Development (HUD) under HUD's Housing Choice Voucher (HCV) program. Plaintiff participated in the program, but on September 28, 2015, the AHA notified her that her benefits would terminate on October 31, 2015, because of violations of program rules. Specifically, the AHA asserted, *inter alia*, that plaintiff had blocked inspections of her housing unit and that drug transactions had taken place there. Plaintiff requested an informal hearing at which to contest the termination. The hearing was conducted on October 15, 2015. On October 22, 2015, a hearing officer upheld the termination. Plaintiff then filed a common law *certiorari* action against defendants seeking review of the termination decision.

¶ 4    Judge David R. Akemann concluded that the record did not sufficiently show that the hearing officer had considered all circumstances germane to the termination decision or that plaintiff had been given an opportunity to confront and cross-examine witnesses. Judge Akemann vacated the AHA's decision and ordered it to conduct a second informal hearing, "which may more clearly provide a record of presentation and consideration of relevant circumstances *and evidence assuring that Plaintiff receives her due process rights*." (Emphasis added.)

¶ 5    On August 31, 2017, the hearing officer once again upheld the termination. Before reviewing that decision, Judge Akemann ordered the AHA to submit a transcript of the second hearing. That order also provided as follows:

> "[W]ithout making a finding regarding the validity of the AHA's decision in the second hearing, the Court can find that Key should be reimbursed for the housing allowance she failed to receive between October 31, 2015 and August 31, 2017. When this Court vacated the AHA's October 22, 2015 decision, the termination was ineffective until the decision following the 2nd hearing."

¶ 6    Judge Akemann subsequently retired, and the case was reassigned to Judge Mark A. Pheanis. On December 10, 2018, Judge Pheanis affirmed the termination decision. On December 17, 2018, plaintiff moved for entry of an order that the AHA "[r]eveal the amount of [her] housing allowance" and "pay her the sum of money due from October 22, 2015 until August 31, 2017." On April 29, 2019, Judge Pheanis entered judgment for plaintiff in the amount of $16,368. The AHA filed a timely notice of appeal.

## II. ANALYSIS

¶ 7

¶ 8    Under the HCV program, "HUD pays rental subsidies so eligible families can afford decent, safe, and sanitary housing." 24 C.F.R. § 982.1(1) (2015). The program is "generally administered by State or local governmental entities called public housing agencies (PHAs)," which receive housing assistance funds from HUD. *Id.* Families participating in the program

are obligated to notify the PHA if a family member no longer resides in a housing unit occupied under the program (24 C.F.R. § 982.551(h)(3) (2015)), to permit the PHA to inspect housing units occupied under the program (24 C.F.R. § 982.551(d) (2015)), and to refrain from engaging in drug-related criminal activity (24 C.F.R. § 982.551(l) (2015)). Violation of these obligations is grounds for termination of assistance. 24 C.F.R. § 982.552(c)(1)(i) (2015). A participating family is entitled to an informal hearing to determine whether a termination decision conforms to the law, HUD regulations, and PHA policies. 24 C.F.R. § 982.555(a)(1)(iv) (2015).

¶ 9    Defendants argue that the trial court's order that the AHA hold a new hearing "did not affect the status of [its] Order terminating Plaintiff's benefits." According to defendants, the trial court's order "simply placed the parties in the position they were in at the time Plaintiff initially sought review before the Hearing Officer." Defendants note that the original decision to terminate plaintiff's housing assistance benefits was ultimately upheld. Thus, according to defendants, the termination decision remained in effect throughout the *certiorari* proceeding.

¶ 10    In response, plaintiff notes the trial court's conclusion that, because it vacated the first hearing officer's decision, the termination was "ineffective" until the second hearing. According to plaintiff, the trial court's ruling was consistent with the due process principles announced in *Goldberg v. Kelly*, 397 U.S. 254 (1970). Plaintiff cites no other basis for the award of post-termination assistance. The sole question before us is when, as a matter of due process, the AHA was entitled to suspend plaintiff's housing assistance. "A procedural due process claim presents a legal question subject to *de novo* review." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009).

¶ 11    Because federal constitutional principles are involved, we look to federal court decisions for guidance. See *M&T Bank v. Mallinckrodt*, 2015 IL App (2d) 141233, ¶ 51 n.3 ("While cases from lower federal courts are not binding, we may consider them as persuasive authority."). Ordinarily, there is no remedy for a due process violation that does not lead to a substantively incorrect result. In the seminal case *Carey v. Piphus*, 435 U.S. 247 (1978), the United States Supreme Court held that students who had been suspended from school, for misbehavior, without due process were not entitled to damages where, had proper procedures been followed, they would have been suspended anyway. In circumstances like those in *Carey*, the deprivation of a party's property interest is attributable to his or her own conduct. See *City of Chicago v. United States Department of Labor*, 737 F.2d 1466, 1472 (7th Cir. 1984).

¶ 12    Cases like *Carey* stand in contrast to those in which there is a loss that is "directly attributable to [the] procedural deprivation rather than to the conduct which caused the justified termination." *Id.* Where the loss of a governmental benefit is directly attributable to the due process violation, the proper remedy might be to restore the benefit, at least until it is terminated through constitutional procedure. Loss of a governmental benefit is directly attributable to a due process violation when the violation accelerates the loss, *i.e.*, when, because of the improper procedure, the benefit was terminated earlier than it would have been had the recipient's due process rights been honored. See *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 440 (D.D.C. 2005) (and cases cited therein). In that event, the recipient is entitled restoration of the benefit from the time of termination until "the earliest date the discharge could have taken effect had the proper procedures been followed." *Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir. 1991).

¶ 13    To illustrate, in *City of Chicago*, a municipal employee was deprived of due process when he was terminated without proper notice and an opportunity to respond. The employee was terminated on July 21, 1976. The Seventh Circuit upheld a finding that, had the city used proper procedure to terminate the employee, he would have remained on the City's payroll through the end of the year. *City of Chicago*, 737 F.2d at 1468-69. Accordingly, the employee was entitled to back pay for the period from July 21, 1976, to December 31, 1976.

¶ 14    These cases teach that although due process violations do not negate decisions terminating government benefits, the recipient is entitled to be placed in the position he or she would have occupied had the termination procedure been constitutional. Put differently, whether a termination decision is effective turns not on the constitutionality of the determination proceeding, but on the substantive basis for the termination decision. Plaintiff has not challenged the hearing officer's ultimate decision upholding AHA's termination of her housing assistance.

¶ 15    We note that, in granting plaintiff a new hearing, the trial court did not find that she had been deprived of due process in the first hearing. Rather, the court reasoned that the record was insufficient to assure that she received due process. Even assuming for the sake of argument that plaintiff's right to due process was somehow violated, the violation could not have accelerated the termination of her benefits. Pursuant to *Brewer*, plaintiff is not entitled to any housing assistance after October 31, 2015, unless she can show that "the earliest date the [termination of housing assistance] could have taken effect had the proper procedures been followed" (*Brewer*, 938 F.2d at 864) was later than October 31, 2015. Under *Brewer*, the operative date is not when plaintiff received due process but when she *could have* received due process.

¶ 16    The first informal hearing took place on October 15, 2015. Even if that hearing was constitutionally deficient, it did not lead to a substantively incorrect result. In this regard, the AHA notified plaintiff on September 28, 2015, that her housing assistance benefits would terminate on October 31, 2015, because she violated her obligations under the HCV program. The hearing officer upheld the termination at the first informal hearing. As noted above, plaintiff does not challenge the hearing officer's ultimate decision upholding AHA's termination of her housing assistance benefits. The record establishes that plaintiff's loss of governmental benefits was caused by her own conduct—the violation of her obligations under the HCV program—rather than a deprivation of procedural due process. Moreover, plaintiff has not shown that, had the AHA used proper procedure to terminate her housing assistance benefits, she would have remained eligible for the HCV program after the termination date of October 31, 2015, specified in the AHA's notice. Since plaintiff did not suffer a loss directly attributable to any due process violation, the trial court erred in awarding plaintiff housing assistance after the original October 31, 2015, termination date.

¶ 17                                    III. CONCLUSION

¶ 18    For the foregoing reasons we vacate the April 29, 2019, order of the circuit court of Kane County awarding plaintiff $16,368.

¶ 19    Order vacated.