**In the Matter of James R. McMEANS, SSN: 411–80–2405, Debtor.**

**Bankruptcy No. 97–80971–JAC–11.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

June 10, 1997.

James T. Baxter, Huntsville, AL, for debtor.

Gary Wolfe, Huntsville, AL, for North Alabama Bank.

### MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This cause came on to be heard on the motion for summary judgment filed by North Alabama Bank, Inc. ("NAB") to lift the automatic stay on certain real property on the ground that the foreclosure sale on same took place prior to the filing of McMeans' petition where both events occurred on the same day. The key issue before the Court is whether a bankruptcy petition is filed for purposes of determining the commencement of a debtor's bankruptcy case upon transmitting by facsimile of same to the bankruptcy clerk or when stamped "filed" by the clerk. This is a core proceeding under 28 U.S.C. § 157(a), (b)(2)(G) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1). The hearing in this matter was held on the 28th day of May, 1997.

Pursuant to Federal Rule of Civil Procedure 56(c) and Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where there is no genuine issue of material fact and the court determines that the moving party is entitled to judgment as a matter of law while viewing the evidence in a

light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Upon due consideration of the pleadings, stipulations, affidavits, and arguments of counsel, the Court finds that there is no genuine issue of material fact in the present case and that NAB is entitled to judgment as a matter of law as NAB concluded the foreclosure sale prior to the commencement of McMeans' Chapter 11 bankruptcy case.[1]

On June 6, 1996, McMeans d/b/a McMeans Construction executed two mortgages with NAB on certain real property located in Madison County, Alabama, commonly referred to as tracts 11 and 12, to secure the payment of two promissory notes executed on the same date for the construction of residential dwellings for resale. On or about November 20, 1996, McMeans executed two corrective mortgages on same and a second mortgage on tract 11.

Upon default in the payment of the indebtedness secured by these mortgages, NAB declared the debt due and payable and commenced foreclosure proceedings. NAB advertised the property for sale by publication in the Huntsville Times for March 12, 1997 between 11:00 a.m. and 4:00 p.m., the legal hours of sale.[2] The foreclosure sale was held on such date beginning at 11:05 a.m. and concluding at 11:10 a.m. NAB, being the highest bidder at the sale, purchased the property.

The Local Bankruptcy Rule adopted by the Bankruptcy Court for the Northern District of Alabama, effective for all cases filed on or after March 1, 1997, states as follows:

### Rule 5005–4  FILING PAPERS WITH CLERK VIA FACSIMILE

(a) *Division Facsimile Machine.* Each Division Office will accept filings by electronic facsimile machine only in compelling circumstances and after prior approval by a judge of the Court or his/her designee(s).

(b) *Signatures.* Each party or attorney for a party electing to transmit material for filing via facsimile shall be deemed to have adopted the facsimile reproduction of that person's signature as that person's signature for purposes of the Bankruptcy Code and Bankruptcy Rules. The signature upon the facsimile copy shall constitute a certificate of compliance with this rule and with the requirements of Rule 9011 of the Bankruptcy Rules.

(c) *Facsimile Filing.* Upon accepting any material for filing under (a) above, the Clerk shall stamp the same "filed," date the same on the date shown on such facsimile, and place the same in the appropriate file.

By administrative order 97–004, the Court authorized Kim Pressnell and Jacque Flory, intake clerks, to approve facsimile transmissions in compelling circumstances pursuant to Local Rule 5005–4(a).

In conformity with Local Rule 5005–4, Karen Graham, a paralegal with the law firm of Berry, Ables, Tatum, Baxter, Parker & Hall, counsel for McMeans, contacted intake clerk, Kim Pressnell ("Pressnell"), at approximately 10:45 a.m. on March 12, 1997 and requested permission to transmit debtor's Chapter 11 petition to the Court via facsimile. The paralegal advised Pressnell that a foreclosure sale of debtor's property was scheduled to take place around noon on March 12, 1997.[3] Pressnell granted Graham permission to transmit McMeans' petition via facsimile.

Counsel for McMeans transmitted debtor's petition and same was received on the bank-

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 9014.

2. Ala. Code § 6–8–41 (1975).

3. Pressnell stated under oath that no request was made to expedite the filing of the bankruptcy petition. Affidavit of Pressnell, Docket # 36. A legal assistant with counsel for debtor stated under oath that upon requesting permission to fax McMeans' petition she informed the intake clerk that "there was a foreclosure set for approximately noon on that same date...." Affidavit of Karen Graham, Docket # 42. The Court does not believe that this discrepancy is material. Upon viewing the facts in a light most favorable to the non-moving party, McMeans, the evidence is that the debtor's petition was file stamped well before this stated "noon" deadline.

ruptcy clerk's fax machine located in the mail room of the clerk's office at 10:46 a.m.[4] Pressnell was the only intake clerk on duty during the relevant period. She proceeded to the mail room when she got the time, picked up the facsimile, returned to the intake desk, and used the electronic file stamping machine to stamp the petition in at 11:27 a.m. The foreclosure sale had been completed at 11:10 a.m.

The debtor remains in possession of the premises and has listed the same for sale. NAB now seeks to lift the automatic stay on the property to proceed with its remedies at state law for possession of the premises.

In support of NAB's motion for summary judgment, the bank argued that the property at issue is no longer property of the estate within the meaning of 11 U.S.C. § 541 subject to the automatic stay provisions of 11 U.S.C. § 362 because the foreclosure sale took place prior to the commencement of McMeans' bankruptcy case when the clerk stamped debtor's petition filed at 11:27 a.m.[5] In response to this argument, McMeans argued that his petition should be deemed filed when transmitted via facsimile at 10:46 a.m. and the foreclosure sale should be set aside as void being conducted post-petition.[6]

Section 301 of the Bankruptcy Code provides that "a voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." The Court must consider whether a bankruptcy petition is filed for purposes of determining the commencement of a debtor's bankruptcy case within the meaning of § 301 upon transmitting by facsimile of same to the bankruptcy clerk or when stamped "filed" by the clerk.

Having found no case directly on point with the facts in this matter involving transmission by facsimile, NAB cites to the Court the case of *In re Butchman*, 4 B.R. 379 (Bankr.S.D.N.Y.1980) where the debtors' attorney chose to mail debtor's bankruptcy petition to the court for filing a few days prior to a scheduled foreclosure sale. In the *Butchman* case, the bankruptcy court determined that the debtors' Chapter 13 case was commenced when their petition was docketed as filed with the court, not when transmitted by mail. The court stated that it regarded the file stamp as the definitive time for purposes of ascertaining whether the debtors' residence was property of the estate under 11 U.S.C. § 541. The act of mailing the petition merely constituted the means by which the debtors' attorney chose to transmit the petition for filing which was concluded by stamping the same filed upon receipt. Similarly, McMeans' attorney chose to transmit debtor's petition to the bankruptcy clerk via facsimile. The filing process was not complete, however, until the clerk file stamped the petition at 11:27 a.m.

McMeans cites the case of *American Express Travel Related Services Co. v. Farley (In re Farley)*, 146 B.R. 82 (S.D.N.Y.1992) in support of his position that his petition was

---

4. The mail room is located at one end of the clerk's office while the intake counter is located at the opposite end, a considerable distance away.

5. *See also Commercial Fed. Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir.1996)(following valid foreclosure sale a debtor cannot cure its default under a mortgage and redeem the property by paying same through his plan).

6. Alternatively, McMeans argued that this Court should set aside the foreclosure for equitable reasons in conformity with the case of *In re Nail*, 195 B.R. 922 (Bankr.N.D.Ala.1996). In Nail, the bankruptcy court set aside the foreclosure sale, as an alternative basis for relief, by turning to the court's equitable powers where the sale was concluded after the Chapter 13 debtors' motion to reinstate the bankruptcy case was granted pursu-

ant to oral order in open court, but before a written order could be entered. The bankruptcy court refused "[t]o allow the drastic relief of foreclosure of a residence simply because of a technical shortcoming of the" court's predicament. *Id.* at 932. In the present case, the Court feels no such responsibility for the predicament of the debtor. McMeans waited fifteen minutes prior to the duly noticed foreclosure sale, for whatever reason, before requesting permission to transmit his bankruptcy petition via facsimile. It is uncontroverted that counsel for McMeans did not contact the clerk's office to verify receipt of the transmission until after the foreclosure occurred. *See* Affidavit of Karen Graham, Docket # 42. Although the circumstances of this case are unfortunate, they were at all times within the control of the debtor's attorney.

filed immediately when transmitted to the clerk's office. In the *Farley* case, the district court determined that a creditor's nondischargeability complaint was filed for purposes of determining timeliness on the *date* received in the clerk's office, rather than three days later when the clerk's office date stamped the complaint. The creditor transmitted the complaint via Federal Express to the bankruptcy court one day prior to the complaint deadline and attached a cover letter thereto which contained "explicit instructions that the complaint needed to be time-stamped by" a certain date. *Id.* The Court believes that the facts of *Farley* are distinguishable from the present case because the key issue in *Farley* was the filing *date* of the petition whereas we are concerned with the exact moment the petition was deemed filed.

The Court believes that the analysis of *Butchman* is more analogous to the present case and finds that McMeans' Chapter 11 case was commenced at 11:27 when received in due course by the clerk and file stamped in conformity with local rule 5005–4(c) which states that "[u]pon accepting any material for filing via facsimile under (a) … the Clerk shall stamp the same 'filed,' date the same on the date shown on such facsimile, and place in the appropriate file." Although there is no question that the clerk must use due diligence to ensure prompt attention to facsimile transmissions so that the same may be dated with the same date shown on the facsimile pursuant to Local Rule 5005–4(c), the clerk cannot be expected to abandon a myriad of responsibilities to wait expectantly by the facsimile machine for a transmission that may occur in the near future, be it one minute or ten, after approving the transmission. In the present case, the Court finds that the clerk followed the procedure proscribed by Local Rule 50054(c) by stamping McMeans' petition filed upon receipt and dating the petition with the same date shown on the facsimile less than one hour after approving the transmission. The clerk also followed the instructions and request of McMeans as she was advised that the foreclosure sale was to occur sometime around noon, The petition was filed stamped at 11:27 a.m., well before this stated 12:00 p.m. deadline.

The bankruptcy court for the Northern Division of the Northern District of Alabama has received over 400 bankruptcy petitions for filing each month during 1997 and processed 4337 new petitions during 1996. A contrary decision would devastate the ability of the clerk's office to process these petitions and necessitate reconsideration of Local Rule 5005–4. The rule is clear on its face and requires a two step process: subsection (a) provides for approval by the court for the use of the facsimile machine to transmit the document to the court, and subsection (c) provides "for" the filing of the document by the clerk. The rule was promulgated to allow the public to take advantage of the benefits provided by facsimile machines, but is tempered by the requirements that it be used only in compelling circumstances, with prior Court approval, and that the facsimile copy must be file stamped by the clerk upon acceptance. Such requirements mandate a finding that the use of the facsimile machine is merely a means by which to transmit material to the clerk's office for filing and not an end in and of itself.