**In re Sylvia SCHLEIER, Debtor.**

No. 02–30138.

United States Bankruptcy Court,
S.D. New York,
Poughkeepsie Division.

March 14, 2003.

Louis J. Artale, Spring Valley, NY, for Creditor The Bank of New York.

Sylvia Schleier, Middletown, NY, pro se.

## MEMORANDUM AND DECISION

CECELIA MORRIS, Bankruptcy Judge.

On August 31, 2001, the Bank of New York ("BONY"), the mortgagee on property of the Debtor, Sylvia Schleier ("Schleier"), located at 237 Derby Road, Middletown, New York (the "property"), received a judgment of foreclosure and sale in New York State Court. Sometime thereafter, after noticing and postponing a foreclosure sale on the property, an auction sale occurred, and a third party made a successful bid for the property. That foreclosure sale began at or about 9:00 a.m. on June 28, 2002, and the sale was struck sometime between 9:15 and 9:20 a.m.

That same day, Schleier filed her Chapter 13 bankruptcy petition *pro se*. She arrived at the White Plains Courthouse and handed a skeleton petition to a deputy clerk at or just before 9:00 a.m., and offered payment of the complete filing fee in cash. The deputy clerk took the petition, explained that the clerk's office did not accept cash and, for approximately the next forty minutes, described what other papers were necessary to complete her petition. When their conversation ended, the deputy clerk date and time-stamped Schleier's petition, "June 28, 2002, 9:36 a.m."

Almost two months later, on August 16, 2002, BONY moved for (i) an Order vacating the automatic stay for cause pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2), 1301(c)(3), (ii) an Order, allowing the Referee in foreclosure to complete the execution and delivery of the deed to the successful bidder at the foreclosure sale, and (iii) a provision allowing the property to remain unaffected by the automatic stay provisions, which may be invoked by any future bankruptcy filings for a period of one year. Schleier filed opposition to the motion on September 6, 2002, and a hearing was scheduled for September 10, 2002.

That September 10th hearing was limited to preliminary matters, primarily for two reasons: first, BONY had failed to submit a memorandum of law in support of its motion as required by S.D.N.Y. LBR 9013–1(b), and second, Schleier's opposition papers were illegible in part. The Court ordered the parties to correct these deficiencies and scheduled an evidentiary hearing on BONY's motion for October 15, 2002.

Approximately one month before that evidentiary hearing was to take place, however, the Chapter 13 Standing Trustee, on September 14, 2002, moved to dismiss Schleier's petition pursuant to (i) 11 U.S.C. § 1307(c)(1) for unreasonable delay prejudicial to creditors, (ii) § 1307(c)(3) for failure to file a timely plan, and (iii) § 1307(c)(4) for failure to make payment pursuant to 11 U.S.C. § 1326. An affidavit of mailing attested that the Trustee's motion was served on appropriate parties including Schleier, BONY and BONY's attorney. A hearing on the Trustee's motion was scheduled for October 9, 2002.

On September 16, 2002, two days after the Trustee moved to dismiss her petition, Schleier filed legible and amended opposition papers to BONY's motion for relief from the automatic stay. She did not file opposition papers to the Trustee's motion to dismiss her petition.

Three days later, on September 19, 2002, BONY filed a response/reply affirmation. Four days after that, on September 23, 2002, BONY filed a memorandum of law. Both were in support of its motion seeking relief from the automatic stay.

BONY also did not file responsive papers to the Trustee's motion to dismiss the case.

On October 9th, the same day as the hearing on the Trustee's motion to dismiss the case, Schleier filed (i) a response to BONY's reply affirmation, (ii) an affidavit of Gilbert Brandt, and (iii) more exhibits including duplicate ones. She still, however, did not file opposition papers or otherwise respond to the Trustee's motion to dismiss her case.

The October 9th hearing on the Trustee's motion was held with no opposition received, and this Court entered an Order dismissing Schleier's petition pursuant to 11 U.S.C. § 1307(c)(1), (c)(3) and (c)(4). Three days later, on October 12th, the clerk's office served by first class mail a Notice of Dismissal of the case on Schleier, and filed a certificate of service to that effect.

Three days after the clerk's office served Schleier with the Notice of Dismissal, she filed, on October 15, 2002, a motion to vacate the Order of Dismissal arguing that she never received notice of the Trustee's motion. This Court, by Order filed that same day, scheduled a hearing for November 6, 2002 on Schleier's motion to vacate the Order of Dismissal.

Two days later, on October 17, 2002, by first class mail, the clerk's office, served a Notice of Hearing on Schleier's motion on all appropriate parties including Schleier, BONY and the Trustee. The next day, October 18, 2002, the Trustee filed opposition to Schleier's motion. One week later, on October 25, 2002, the hearing on Schleier's motion was adjourned from November 6th to November 20th. Two days before that hearing, on November 18th, Schleier again filed papers, styling these as her "Amended Response to the Reply Affirmation in Support of Motion Seeking Relief From the Stay Provisions of the Automatic Stay and Related Relief."

The November 20th hearing on Schleier's motion to vacate the Order of Dismissal was held. At that hearing, BONY orally joined in Schleier's motion, but for the limited purpose of determining the validity of the foreclosure sale. The Trustee also appeared, but in opposition to the motion. At the conclusion of the hearing and by Order filed that same day, this Court reopened the case, "but solely for the limited purpose of determining the validity of [the mortgage] foreclosure sale," and scheduled an evidentiary hearing.

On December 9, 2002, that evidentiary hearing was held. Prior to the admission of any evidence, including witness testimony, the parties expressly agreed that in the interests of justice, and in recognition that the Court rather than a jury would be the finder of fact, that they would rely upon the Court's discretion in regard to the admission and weight of evidence. The parties also expressly agreed that for the purpose of ascertaining relevant facts, the Court would, as part of its judicial function when warranted, but with the recognition that it was not an advocate for either party, ask the parties and/or their witnesses relevant questions, the answers to which might help it reach a decision.

Immediately thereafter, the evidentiary hearing was held. Based on the evidence, the Court makes the following findings of fact:

*Facts*

1. BONY held a mortgage on debtor's property at 237 Derby Road, Middletown, New York.

2. Schleier was in default on that mortgage on the day the day she filed for bankruptcy, June 28, 2002.

3. A foreclosure action was commenced properly in New York Supreme Court, Orange County.

4. Richard N. Lentino, Esq. was appointed as Referee by Court Order dated June 25, 2001.

5. A Judgment of Foreclosure and Sale was entered September 18, 2001.

6. The property was noticed for sale November 21, 2001.

7. That sale was postponed and again noticed for sale June 14, 2002.

8. That sale was either postponed or cancelled, and rescheduled for June 28, 2002 at 9:00 a.m. at Supreme Court in Goshen, New York.[1]

9. The Referee commenced the foreclosure sale at or about 9:00 a.m. on June 28, 2002.

10. Among those in attendance at the foreclosure sale were Mr. Lentino, Alan Lipman, attorney for Power Development LLC, David Salisbury, Principal of Power Development and an unsuccessful bidder.

11. Schleier most likely handed her skeleton Chapter 13 petition to a deputy clerk of the United States Bankruptcy Court, Southern District of New York, White Plains Division, at or just before 9:00 a.m. on June 28, 2002, but in no event later than 9:05 a.m.

12. At the same time she handed her petition to the deputy clerk, Schleier offered full payment of the filing fee in cash.

13. The deputy clerk took Schleier's petition at or before 9:05 a.m., explained that the clerk's office did not accept cash and, for approximately the next thirty to forty minutes, described to Schleier what other papers were needed to complete her petition.

14. Gilbert Brandt, a resident with Schleier at 237 Derby Road, drove her to the White Plains Courthouse and, after parking the car, entered the clerk's office at 9:05 a.m., and observed Schleier and the deputy clerk in conversation.

15. At no time did Schleier inform the deputy clerk that a foreclosure sale was scheduled for that morning.

16. After a series of alternating bids, the property at the foreclosure sale property was struck down by the Referee at the final and highest bid price of $245,000 by Mr. Salisbury on behalf of Power Development, LLC at or between 9:15 and 9:20 a.m.

17. When the conversation between Schleier and the deputy clerk ended on the morning of June 28, 2002, the deputy clerk immediately date and time-stamped Schleier's petition "June 28, 2002, 9:36 a.m."

18. As to the value of the property:

 a. BONY did not offer admissible evidence, nor did it cross Schleier on her testimony;

 b. Schleier's admissible evidence was limited to her testimony as a lay person;

 c. Schleier initially testified that she thought the property was worth $1,400,000.00. She later testified that the property's value was more than one million dollars based on a comparative study of other property for sale; and

 d. Schleier testified that the bid price from the foreclosure sale was "totally inadequate" and "shock[ed] the conscience."

---

1. Conflicting evidence was admitted as to whether the foreclosure sale noticed for June 14, 2002 was postponed or cancelled. If it was postponed, its rescheduling for two weeks later conforms to applicable New York State notice requirements. If it was cancelled, an issue exists whether the foreclosure sale on June 28, 2002 was proper. For purposes of this Decision, however, it is not necessary for this Court to reach that issue.

19. Mr. Lentino, Mr. Lipman and Mr. Gilbert testified at the December 9th evidentiary hearing. The Court has determined that these three witnesses were highly credible. None of their testimony was controverted.[2]

20. Schleier also testified at the December 9th evidentiary hearing. This Court has determined that she was truthful, but unfocused in her testimony.

## THE PARTIES' ARGUMENTS

### BONY's Argument

BONY contends that as a matter of law the filing of a bankruptcy petition occurs at the precise time and date stamped on the petition. Relying on this contention, BONY asserts that the foreclosure sale here was valid because the property was struck down before the petition was time-stamped. It argues that Schleier was divested of her property interest before the automatic stay provision of the Bankruptcy Code became effective. BONY cites to *In re Butchman*, 4 B.R. 379 (Bankr.S.D.N.Y. 1980) and *In re McMeans*, 209 B.R. 253 (Bankr.N.D.Ala.1997) to support its contention.

### Schleier's Argument

Schleier argues, in effect, that (i) filing does not necessarily occur at the precise time and date stamped on the petition; (ii) she arrived at the clerk's office and handed her petition to the deputy clerk at or before 9:00 a.m.; (iii) although she handed a skeleton petition to the deputy clerk, it nevertheless was sufficient for filing purposes; (iv) she was prepared and offered to pay the filing fee in cash at that time; (v) the petition should be considered filed at the time that she handed and the deputy clerk received it, not at the precise time it was time-stamped; (vi) the foreclosure sale was improperly noticed; and (vii) the final bid price at the foreclosure sale was totally inadequate such as to shock the conscience.

## THRESHOLD ISSUE

At what time is a bankruptcy petition filed with the court: (i) when the clerk first received possession; (ii) when the petition is time-stamped; or (iii) some other time?

## HOLDING

 This Court holds that the date and time-stamp on a bankruptcy petition creates a rebuttable presumption as to when it was filed. To rebut that presumption, a debtor must submit evidence that demonstrates the petition was filed at a different time, *i.e.*, earlier. The evidence must show that when the petition was presented to the office of the clerk, it was in acceptable filing form, and was received by a representative of that office.

 Here, Schleier has met that standard. She demonstrated that her petition was filed at or before 9:05 a.m. on June 28, 2002 when (i) she presented it to the clerk's office in acceptable filing form, (ii) it was received by the clerk's office, and (iii) she was ready and able to pay the filing fee in cash. BONY demonstrated that the property was struck down at the foreclosure sale sometime between 9:15 and 9:20 a.m. that same day. Thus, Schleier's filing took place before the property was struck down.

---

**2.** This Court has been informed that Schleier has filed grievances against attorneys Artale, Lentino, and Lipman, relating to the foreclosure sale at issue in this proceeding. While these grievances are not before this Court, nothing contained herein should be construed in any way that any of these men did anything unethical relating to this foreclosure sale.

■ The automatic stay takes effect when the bankruptcy petition is filed. After that point, actions taken in violation of the stay are void. Here, the foreclosure sale is void because it took place after Schleier filed her petition.

### DISCUSSION

The central purpose of Chapter 13 is to allow the honest but unfortunate debtor a fresh start. Section 362(a) helps codify this fundamental principle. Section 362(a) provides in relevant part that a petition filed under Section 301, 302, or 303 of this title operates as a stay. It is effective upon the filing of the case. It is not a judicial injunction that depends on notice.

Under Section 101(42), " 'petition' means petition filed under section 301, 302, 303, or 304 of this title, as the case may be, commencing a case under this title." In the case of Section 301, the applicable one here, "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter."

Filing and, in particular, the time of filing, however, is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules for the Southern District of New York. Nor is there mandatory case authority on this issue that this Court is required to follow. Because timing might be of great importance in cases such as this one, where filing occurs to prevent a foreclosure of a debtor's residence, it is incumbent upon this Court to squarely address this issue, *i.e.*, for this Court to determine when filing occurs. Because of this issue's importance, this Court shall explain its reasoning and the persuasive holdings of other courts that have faced this or similar issues, with recognition that Bankruptcy Courts are courts of equity serving the interests of justice and that the central purpose of Chapter 13 is to allow the honest but unfortunate debtor a fresh start.

Other courts, when faced with this or similar timing issues, seemingly have reached conflicting results. Some hold that the time stamped on the petition is dispositive; others permit the introduction of evidence to demonstrate that the petition was filed earlier.

In 1989, the Ninth Circuit Bankruptcy Appeal Panel faced a similar issue to that presented here. *See In re Godfrey*, 102 B.R. 769 (9th Cir. BAP 1989). In *Godfrey*, the debtors gave their petition to the clerk before the competing foreclosure sale, but the clerk returned it because the petition was incorrect under the local rules. The debtors returned a corrected copy to the clerk one minute before the foreclosure sale. The petition, however, was not file stamped until two minutes after the sale took place.

The *Godfrey* Court rejected the petition time stamp as dispositive evidence of when it was filed. Instead, the Court held that the petition was filed when it first was placed in the possession of the clerk. *Godfrey*, 102 B.R. at 771; *see also Home Savings of America, F.S.B. v. Chicago Title and Trust Co.*, 92 CIV. 5510, 1994 WL 323222 (N.D. Ill June 30, 1994) ("A foreclosure sale occurring after the filing of a bankruptcy petition, even just moments thereafter, is void in violation of the automatic stay"); *In re Domaleczny*, 142 B.R. 287 (Bankr.N.D.Ill.1992). The *Godfrey* Court analogized the issue to when a complaint is considered filed in civil proceedings, and cited to *Cintron v. Union P.R. Co.*, 813 F.2d 917 (9th Cir.1987). In *Cintron*, the Ninth Circuit held that the original complaint was filed when the papers and pleadings were placed in the possession of the clerk. *Id.* at 920. The *Cintron* Court cited Federal Rule of Civil Proce-

dure 5(e), which defines filing with the court as "filing them [papers] with the clerk" and held that the definition of "filing" is placing in possession of the clerk. *See also, Gilardi v. Schroeder,* 833 F.2d 1226, 1233 (7th Cir.1987), (holding a complaint is filed when it reaches the custody of the clerk, even if it fails to conform with the formal requirements of local rules); *Lyles v. Board of Commissioners of Cook County,* 1991 WL 101633 (N.D.Ill.1991).

Bankruptcy Rule 1002(a) provides further guidance, "[a] petition commencing a case under the Code shall be filed with the clerk." On the logic of *Godfrey, Cintron, Domaleczny* and similar cases, the petition here was filed when the deputy clerk took it into his custody. In this case, however, there is an additional issue not raised in *Godfrey.* Here, Schleier did not pay the required filing fee in acceptable tender when the clerk received possession of her petition. Bankruptcy Rule 1006(a) requires that "[e]very petition shall be accompanied by the prescribed filing fee. . . ." This additional issue, however, does not impact this Court's holding because Schleier was prepared and offered to pay the filing fee in cash at the time she handed the petition to the deputy clerk. It was the deputy clerk who was not prepared to accept the filing fee until Schleier offered it in a form other than cash.[3] *See Domaleczny,* 142 B.R. at 288 (reaching the same result under similar circumstances).

A related issue arose in *Cintron* where the plaintiff paid too high a filing fee with his complaint. The clerk sent the complaint and check for the fee back and the plaintiff was unable to re-file in time. The *Cintron* Court held that a statutory filing fee should not be elevated to the level of a jurisdictional requirement. 813 F.2d at 920. *See also Parissi v. Telechron, Inc.,* 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955) (holding that nonpayment of filing fees did not affect the validity of an appeal); *Chicago v. U.S. Dept. of Labor,* 737 F.2d 1466, 1471 (7th Cir.1984) (notice of appeal and petition for review is filed once court of appeal receives actual custody of the document, notwithstanding failure to pay docketing fee). Bankruptcy Courts also have held that pleadings other than petitions filed without proper filing fees will be considered "filed" as of the date the pleadings were put in the clerk's custody. *See, e.g., Cosper v. Frederick,* 73 B.R. 636 (Bankr.N.D.Fla.1986) (complaint to determine dischargeability). These cases do not deal with the effect, if any, of Bankr.R. 1006(a), which is only applicable to petitions.

Nor does Bankruptcy Rule 1006(a) lead to a different result here. That Rule does not determine when a petition is filed. It requires only that a petition is accompanied by a fee. It does not mandate that a petition should not be considered filed until the fee is paid. Here, Schleier's petition was accompanied with a proffered filing fee payment. On these facts, Schleier's petition was filed when it was placed in the custody of the deputy clerk.

In 1992, a New Jersey District Court, when faced with a similar issue, upheld a Bankruptcy Court's decision, which had reached the same result as the *Godfrey* Court. *National Westminster Bank v.*

---

**3.** A clerk's office inability to accept cash is not the fault of the debtor, and the debtor should not be penalized for seeking to pay a timely fee in United States currency.

Nor does this Court address the issue of whether timely payment of a filing fee is a jurisdictional requirement. *See Cintron v.*

*Union Pacific R Co.,* 813 F.2d 917 (9th Cir. 1987), *Rodgers on Behalf of Jones v. Bowen,* 790 F.2d 1550 (11th Cir.1986); *National Westminster Bank v. Markings Assoc.,* No. CIV. 92–3079, 1992 WL 281158 (D.N.J. Sept. 21, 1992).

*Markings Assoc.,* No. CIV. 92–3079, 1992 WL 281158 (D.N.J. Sept. 21, 1992). In *National Westminster Bank,* the debtor filed a bankruptcy petition on the same day as a scheduled foreclosure sale. The debtor in that case first attempted to file its petition at 1:40 p.m. on October 16, 1991. The clerk, however, refused to file the petition because the debtor had a check for $120.00 rather than the required filing fee of $500.00. The debtor returned shortly thereafter with the required fee, and the petition was time stamped filed at 2:17 p.m. The property at issue in that case, however, was purchased at a sheriff's sale that same day at 2:05 p.m., twelve minutes before the debtor's petition was time stamped filed.

The bank in *National Westminster Bank,* as BONY does here, argued that at the time of the filing and as a result of the sale, the debtor did not have the requisite interest in the property such that the automatic stay provision of the Bankruptcy Code stayed the sale. The *National Westminster* Bankruptcy Court, however, rejected the bank's argument, holding the debtor's petition was filed before the sheriff's sale of the property. On appeal, the District Court affirmed the Bankruptcy Court's decision and its reliance on *In re Godfrey,* and held that the sheriff's sale was void. *National Westminster Bank,* 1992 WL 281158, at *2–3.

Other courts, however, when faced with similar issues, have reached results that might appear, at first blush, to differ from those set forth above. These Courts arguably have held that when determining when a petition is filed, the dispositive factor is the petition time stamp. These decisions, however, were based on factual circumstances that differ materially from those here. They should not be read to encompass the factual setting where a debtor appears personally at a clerk's office to file a petition that is in acceptable form where it is received by a deputy clerk at a time certain. These holdings are based on filings by mail or facsimile transmission, and should not be extended to encompass all circumstances of filing. In no event should they be extended to encompass the facts of this case.

BONY relies on two such cases, *In re Butchman,* 4 B.R. 379 (Bankr.S.D.N.Y. 1980) and *In re McMeans,* 209 B.R. 253 (Bankr.N.D.Ala.1997). In *Butchman,* the Court was presented a similar timing issue regarding the docketing of a Chapter 13 petition that was received by the clerk's office the same day as a scheduled foreclosure sale. In that case, however, the debtors' Chapter 13 petition was mailed by their attorney to the Bankruptcy Court in White Plains, New York, towards the end of the week preceding the scheduled Monday morning foreclosure. The debtors' papers were received in due course by the clerk, who date and time stamped them April 14, 1980 at 12:04 p.m. The foreclosure sale took place that same day at 10:00 a.m. and the sale was struck down at 10:05 a.m.

The *Butchman* Court found that the debtors' Chapter 13 case was commenced at 12:04 p.m. when the petition was docketed, which was after the foreclosure sale. Thus, the Court held that the foreclosure sale was valid because the debtors' legal and equitable interests in the property had been terminated before their petition was filed.

BONY asserts that the holding in *Butchman* is that the bankruptcy proceeding was commenced when the petition was stamped filed with the date and time. BONY ignores, however, the factual differences between *Butchman* and here. In *Butchman,* neither the debtors' attorney nor the debtors appeared in person at the Clerk's office with the debtors' petition.

Instead, the debtors' attorney mailed the petition to the Court where it was received in due course.

The facts here are different. Here, Schleier appeared at the clerk's office with her petition in acceptable form where it was received by a deputy clerk before the foreclosure sale took place. Nowhere in the *Butchman* decision does the Court refer to the debtors' petition as being received by the Clerk's office before the foreclosure sale took place. That issue simply was not addressed by the *Butchman* Court. Here, in direct contrast to the *Butchman* facts, despite date and time stamping Schleier's petition after the foreclosure sale, there is no question that the deputy clerk received Schleier's petition before the sale began and was struck down.

BONY also relies on *In re McMeans,* which, like here, involved the issue of whether a petition was filed before a foreclosure sale. *In re McMeans, supra.* In *McMeans,* however, the facts again are materially different than those here. In *McMeans,* the debtors did not appear personally at the clerk's office to file their petition as Schleier did here. Nor was the debtors' petition in *McMeans* received by the clerk's office before the foreclosure sale took place. Instead, the debtors' attorney in that case sent the petition by facsimile to the clerk's office where it was received on the bankruptcy clerk's fax machine before the foreclosure sale. It was, however, not picked up by the deputy clerk and stamped until seventeen minutes after the sale had been completed. The *McMeans* Court held that the filing process was not complete until the petition had been stamped.

The *McMeans* Court cited to the Northern District of Alabama's Local Bankruptcy Rule for filing papers with the clerk via facsimile and reasoned that although the clerk must use due diligence to ensure prompt attention to facsimile transmissions so that the same may be dated with the same date shown on the facsimile, the clerk cannot be expected to abandon a myriad of responsibilities to wait expectantly by the facsimile machine for a transmission that may occur in the near future. The Court held that the local rule merely provided a means by which to transmit material to the clerk's office for filing and was not an end in and of itself.

Here, BONY seeks to extend the *McMeans* decision from a facsimile transmitted filing to a petition that was filed in person by a debtor at the clerk's office. It offers no support for this proposed extension. Here, Schleier did not seek to file her petition by facsimile where it would be received at an uncertain time by the clerk's office. Instead, she appeared personally at a time certain at the clerk's office before the foreclosure sale began, handed her petition in acceptable form to a deputy clerk who received it before the foreclosure began and before the time the sale was struck. That did not happen in *McMeans.*

Here, BONY demonstrated through the credible testimony of Mr. Lentino, the Referee, and Mr. Lipmann, the attorney for Power Development LLC, the ultimate successful bidder at the foreclosure sale, that the foreclosure sale was struck down sometime between 9:15 and 9:20 a.m. on June 28th. Schleier's petition was date and time stamped June 28, 2002, 9:36 a.m. Thus, a rebuttable presumption arose that the foreclosure sale took place before Schleier's petition was filed.

The burden of going forward with evidence then switched to Schleier to demonstrate that her petition was filed not at the time stamped on it, but before the foreclosure sale strike down time. Schleier presented Mr. Brandt's credible testimony

and her own uncontroverted testimony to make this showing.

Schleier testified, among other things, that on June 28, 2002, (i) Mr. Brandt drove her to the White Plains Courthouse, (ii) because she wasn't feeling well that morning, Mr. Brandt dropped her in front of the building at 8:50 a.m., (iii) she went through security, up an elevator, walked into the clerk's office, (iv) she went to the counter where she handed her petition to a deputy clerk and offered full payment of the filing fee in cash at or between 8:55 and 9:00 a.m., (iv) the deputy clerk accepted her petition and came from behind the counter and they sat down together at a table, and (v) while sitting at the table, the deputy clerk explained what other papers were needed to complete her skeleton petition.

Mr. Brandt testified that after dropping Schleier at the Courthouse, he parked the car, entered the building and proceeded to the clerk's office arriving at 9:05 a.m. at which time he witnessed Schleier in conversation with a deputy clerk. Both Schleier's and Brandt's testimony was credible and undisputed. Accordingly, this Court finds that Schleier filed her petition at or before 9:05 a.m., at least ten minutes before the foreclosure sale strike down time.

*Adequacy of the Price*

█ In any event, the only admissible evidence presented in this case regarding the adequacy of the purchase price at the foreclosure sale was provided by Schleier. BONY did not challenge her testimony. Nor did BONY offer any evidence relating to the adequacy of the price at the foreclosure sale. Schleier not only testified as to the value of the property, she also testified that the sale price at the foreclosure sale "shock[ed] the conscience."

The Court, finding Schleier unfocused, but credible, must accept her testimony on this issue. Thus, the Court finds that the purchase price at the foreclosure sale was inadequate. It was the only evidence admitted on this issue.

Accordingly, even had this Court found that the petition was filed after the sale was struck down at the foreclosure sale, this Court still would hold the sale invalid.

### *CONCLUSION*

The only issue before this Court is to determine the validity of the mortgage foreclosure sale. For the foregoing reasons, this Court holds that sale invalid.

This Court shall issue a separate Order in conformity with this Memorandum and Decision.