**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230215-U

Order filed February 13, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| JON IBRAHIM, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-23-0215 |
| | ) | Circuit No. 22-MR-169 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | Honorable |
| ROMEOVILLE FIREFIGHTERS' | ) | John C. Anderson, |
| PENSION FUND, | ) | Judge, Presiding. |
| | ) | |
| Defendant-Appellant. | ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice McDade and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    _Held_:  The circuit court abused its discretion in remanding the matter to the administrative agency for a new hearing.

¶ 2    Plaintiff, Jon Ibrahim, filed a complaint for administrative review in the Will County circuit court arguing that the Board of Trustees of the Romeoville Firefighters' Pension Fund ("Board") violated his due process rights when it denied him certain pension benefits. The Board

appeals the circuit court's decision to remand the matter to the Board for a new *de novo* hearing. For the following reasons we reverse.

¶ 3                                                    I. BACKGROUND

¶ 4        Ibrahim is a former deputy chief for the Village of Romeoville Fire Department. On September 7, 2018, while he was still employed by the Village, the Village Mayor increased his annual salary from approximately $125,000 to $150,000. This salary increase was later approved by the Village's Board of Trustees. Ibrahim then retired on October 3, 2018. He received his final paycheck on November 19, 2018, and the paystub reflected the $150,000 salary.

¶ 5        On March 10, 2021, Ibrahim submitted a written application to the Board to start receiving his retirement pension. On April 7, 2021, the Board met to review Ibrahim's application. The Board voted 3-0 to approve the application in "an amount to be determined with calculations made by the village management." No specific amount was approved by the Board at the meeting.

¶ 6        On May 13, 2021, Village Finance Director Christi Jacobsen emailed Ibrahim a copy of his final pension calculations. Ibrahim responded to Jacobsen's email stating that he disputed her calculations. Jacobsen's initial calculations were based on an annual salary of $125,052.46, while Ibrahim stated his pension should be based on a salary of $150,000.24. Jacobsen forwarded Ibrahim's calculations to the Board.

¶ 7        On May 21, 2021, the Board President, Marty Henry, sent a letter to Ibrahim denying his request to adjust his retirement calculations. The letter explained that the Board was not aware of or involved with Ibrahim's settlement agreement with the Village. The Board shared the agreement with its legal counsel who determined that "it is against legal precedent, public policy, and the regulations of the Illinois Department of Insurance for the Pension Fund Board to award

a retirement pension on a sum of money that has been artificially increased." It further stated that doing what Ibrahim requested would result in an unauthorized pension spike that it was not permitted to perform, which would conflict with its fiduciary duties to the Fund and its members. Therefore, the Board would apply its original calculations to Ibrahim's pension. Henry also invited Ibrahim to the next Board meeting to review the decision.

¶ 8    On August 17, 2021, the Board held a board meeting where the agenda listed a possible action item of reviewing Ibrahim's request to amend his base salary when calculating his retirement pension. Ibrahim attended the meeting with his attorney. After Ibrahim's attorney gave a brief presentation arguing why Ibrahim should receive the increased salary benefit, the Board voted to table the decision to a later date.

¶ 9    The Board reconvened on January 11, 2022, when it voted unanimously to deny Ibrahim's request. It issued a written Findings and Decision, which reiterated the reasoning set forth in Henry's May 21, 2021, letter to Ibraim. Thereafter, Ibrahim filed a complaint in the Will County circuit court requesting administrative review. In his complaint, Ibrahim argued that the Board failed to provide him with proper notice or an opportunity to be heard, violating his right to due process. Further, he argued that the Board applied the wrong standard when reviewing his salary for the purpose of calculating his pension benefit. The Board responded to Ibrahim's complaint by arguing that Ibrahim's end-of-career raise was an impermissible attempt to increase his pension. The crux of its argument was that the Illinois Pension Code defines salary as the annual salary "established by the municipality['s] appropriation ordinance," and that Ibrahim's increase was not reflected in that ordinance or in any amendment to the Village's appropriation ordinance. Therefore, the Board could not use Ibrahim's raise to calculate his pension. Further, the Board pointed out that the settlement agreement between Ibrahim and the Village that

3

increased his salary was not approved by or discussed with the Board, and it could not be obligated to perform under the terms set out by other parties.

¶ 10     After briefing, the circuit court remanded the case back to the Board for "a full *de novo* hearing on issues, with [ ] Ibrahim permitted to call and cross examine witnesses." The Board filed a petition for leave to appeal under Illinois Supreme Court Rule 306(a)(6), which this court granted. Ill. S. Ct. R. 306(a)(6) (eff. Oct. 1, 2020).

¶ 11                                         II. ANALYSIS

¶ 12     On appeal, the Board argues that the circuit court erred in remanding the matter for a *de novo* hearing. In support of its argument, the Board first contends that Ibrahim's due process rights were not violated because he did not have a due process right to an illegally increased pension. In the alternative, the Board argues that nevertheless, Ibrahim did indeed receive a proper hearing and that he waived this argument for review in the circuit court.

¶ 13     The parties do not dispute that the standard of review in this case is for us to determine whether the circuit court abused its discretion in remanding the matter back to the Board for a new hearing. *Demesa v. Adams*, 2013 IL App (1st) 122608, ¶ 39. Accordingly, we will only reverse the order of the circuit court remanding the matter for a new hearing before the Board if the circuit court abused its discretion. An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful, or unreasonable. *Seymour v. Collins*, 2015 IL 118432, ¶ 27.

¶ 14     The fourteenth amendment of the United States Constitution requires Ibrahim be afforded due process before the Board issues a final decision affecting his pension. U.S. Const., amend. XIV. "The demands of due process do not require a hearing[ ] at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite

4

hearing is held bef[ore] the final order becomes effective." *Opp Cotton Mills v. Administrator of Wage & Hour Division of the Department of Labor*, 312 U.S. 126, 152-53 (1941).

¶ 15    Due process during an administrative proceeding may not be identical at every proceeding. It does not require a proceeding before the Board that mirrors a trial. *Consiglio v. Department of Finance and Professional Regulation*, 2013 IL App (1st) 121142, ¶ 18. "The essence of procedural due process is meaningful notice and a meaningful opportunity to be heard." *Tretenero v. Police Pension Fund of City of Aurora*, 333 Ill. App. 3d 792, 799 (2002). The proceeding only needs to provide the party with a meaningful procedure to assert his claim before the deprivation of a property right. *Snow v. Chicago Transit Authority*, 2022 IL App (1st) 201217, ¶ 54.

¶ 16    Notice in an administrative proceeding "must be reasonably calculated to apprise interested parties of the contemplated action and to afford the interested parties an opportunity to present their objections." *East St. Louis Federation of Teachers, Local 1120 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 420 (1997). It is clear that Ibrahim had notice of the meeting, as the meeting date was included in Henry's letter, and the topic was subsequently placed on the Board's agenda after Ibrahim indicated he wished to attend. Ibrahim argues that Henry's May 21, 2021, letter was a final decision and that he was entitled to due process prior to that letter being issued. However, even in his complaint for administrative review, he admits that the letter was not a final decision. See *Opp Cotton Mills*, 312 U.S. at 153. Further, it was not until after the Board meeting where Ibrahim's attorney spoke on his behalf that the Findings and Decision was drafted and issued. 735 ILCS 5/3-101 (West 2020) (defining "administrative decision" as "any decision, order or determination of an administrative agency rendered in a particular case, which affects the rights, duties or privileges

5

of parties and which terminates the proceedings before an administrative agency."). Thus, the Findings and Decision in this case is the actual final decision, and Ibrahim received notice before that decision was made.

¶ 17        Ibrahim also had an opportunity to be heard when his attorney presented his objections on his behalf at a Board meeting. A full evidentiary hearing is not necessarily required to afford a party due process. *Snow*, 2022 IL App (1st) 201217, ¶ 56. The affected party must have an opportunity to present objections to the administrative board's actions, but there are no other formal requirements. *Id.* In deciding whether a party was afforded a meaningful opportunity to be heard, we consider and weigh the private interest affected by the action; the risk of an erroneous deprivation of a protected right through the procedure used, as well as any additional safeguards that could be employed; and the government's interests, including any burdens that additional safeguards would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, it is clear Ibrahim had a significant private interest in receiving his pension. We also recognize the Board's interest in protecting the fiscal integrity of the pension fund by ensuring its participants do not receive benefits to which he or she are not entitled.

¶ 18        As for the second factor, the risk of an erroneous decision may be mitigated by procedural safeguards. While there is a risk of error here, we find that the Board took several steps to mitigate that risk. It notified Ibrahim of its preliminary assessment of the situation, explained the analysis the Board's attorney took to reach the conclusion that Ibrahim should not receive the increased pension, and invited Ibrahim to the next Board meeting to further discuss the matter. After Ibrahim indicated he wished to attend the next meeting, the Board placed him on the agenda. At that meeting, the Board afforded him and his attorney the opportunity to voice

6

their objection and provide argument to support their position. The Board's procedural safeguards in this case were sufficient to substantially reduce any risk of an erroneous decision.

¶ 19 Ibrahim cites *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992), to argue that he did not receive his full procedural due process rights because he was not given the opportunity to subpoena and question witnesses. However, there is nothing in the record that indicates that Ibrahim attempted to subpoena any witnesses or otherwise question members of the Board. Further, *Abrahamson* provides that "[a] fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Id.* at 95. There were no adverse witnesses in this matter for Ibrahim to cross-examine. Thus, under the case Ibrahim himself cites as precedent this court should follow, he has not indicated under what element he was deprived of due process. Ibrahim has not provided any authority to support his argument that he was entitled to issue subpoenas, or how the Board prevented him from questioning anyone. The Board cannot later be found to have deprived Ibrahim of a right when he chose not to exercise that right in the first place.

¶ 20 Even if we were to find Ibrahim has a protected interest entitling him to due process related to the increase in pension amount and that he did not waive the argument for review, we must also find that the Board did not violate that due process right, as it afforded Ibrahim with sufficient notice and an opportunity to be heard. Ibrahim received notice of the Board meeting where he could explain his position that he should receive a higher pension. He was present, with an attorney, and argued before the Board prior to the issuance of the Board's Findings and Decision. Thus, Ibrahim received notice and an opportunity to be heard prior to the Board's decision on a pension amount. Accordingly, there was no violation of Ibrahim's due process

7

rights, and the circuit court abused its discretion in remanding the matter back to the Board for a new hearing.

¶ 21                                III. CONCLUSION

¶ 22        The judgment of the circuit court of Will County is reversed.

¶ 23        Reversed.